464 So.2d 948 (1985)
Roch E.E. deMONTLUZIN, III
v.
Edith Eskrigge, wife of Roch E.E. deMONTLUZIN, III.
No. CA-2228.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Philip R. Riegel, Jr., Parlongue & Riegel, New Orleans, for defendant-appellant.
Russ M. Herman, Steven J. Lane, Herman, Herman & Katz, New Orleans, for plaintiff-appellee.
Before REDMANN, C.J., and GULOTTA and WILLIAMS, JJ.
WILLIAMS, Judge.
This is a dispute over the meaning of a phrase in a consent judgment regarding post-divorce alimony and child support paid to Edith de Montluzin by Roch de Montluzin. The clause states:
"The payment of the $1,300.00 alimony and child support shall terminate on September 1, 1983."
The de Montluzin's were married in 1960 and had four children. On September 12, 1980, the parties were divorced pursuant to a consent judgment on the basis of living one year separate and apart. In addition to the $1,300.00 per month payment, it was agreed that Mr. de Montluzin would pay the house note and certain educational and medical expenses for the children.
*949 On August 31, 1983, Mrs. de Montluzin filed a rule for post-divorce alimony. On November 3, 1983, Mr. de Montluzin answered asserting, among other things, that his former wife was not entitled to post-divorce alimony because she was at fault in the divorce and because she had entered into a consent agreement which terminated alimony on September 1, 1983.
On January 5, 1984, the husband filed a motion to compel discovery and a motion in limine. On February 15, the trial judge ruled that the payments in question terminated on September 1, 1983 and that the wife had no further right to alimony. The wife filed for supervisory writs which this court denied on the basis that she should have invoked an appeal. Remedial writs to the Supreme Court were also denied. 447 So.2d 1088. Mrs. de Montluzin asserts that the trial court erred in ruling without an evidentiary hearing and asks this court to order an evidentiary hearing. The issues on appeal are whether the language of the consent judgment expressed the wife's intent to permanently waive future alimony rights; if extrinsic evidence should be admitted to clarify ambiguities of the terms of the judgment and, if the consent judgment is subject to modification may the husband litigate all issues, including fault, which were in effect prior to entering into the consent judgment.
Mrs. de Montluzin claims that the phrase in controversy should be interpreted as meaning that the $1,300.00 per month payment terminated in September 1, 1983, not that all future alimony rights are waived. She claims that in order to ascertain the true intent of the parties extrinsic evidence, that is the testimony of the drafting attorneys, should be admitted. The husband claims that the unambiguous meaning of the judgment is that all support, present and future, should be terminated. We find that the phrase in question is not ambiguous in that the parties meant for the $1,300.00 payment to terminate on September 1, 1983. What is ambiguous, however, is the legal effect of the phrase. It must be determined, therefore, if the phrase meant that all alimony terminate on September 1, 1983, or if only the $1,300.00 payment terminated with other arrangements to be made.
The waiver of permanent alimony while permissible, should be done in a clear and unequivocal manner. Mrs. de Montluzin's deposition seems to indicate that she was unclear as to the ramifications of the agreement she signed, and that she had left all decision-making to her attorney. This court in Bart v. Chaisson, 454 So.2d 890 (La.App. 4th Cir.1984) found that where one spouse did not personally participate in the negotiations, confection, or consummation of a consent judgment, the intent of the non-participating spouse must be considered to be the same as the intent of the attorney. The court stated:
It is not possible to determine the true intent of the two "sides" which agreed to the consent judgment without knowing the intentions of [the attorney] as he negotiated and expressed agreement on behalf of his client for what he thought was best. 454 So.2d at 893.
While we realize that Mr. de Montluzin insists that the agreement clearly states that any and all alimony payments terminated on September 1, 1983; for the reasons enunciated in Bart v. Chaisson, 454 So.2d 890 (La.App. 4th Cir.1984), it is our determination that the case be remanded to the District Court to try Mrs. de Montluzin's rule seeking post-divorce alimony and to hear and consider evidence concerning the parties' intent.
Additionally we find that the issue of fault may be litigated since there is no evidence that it has ever been litigated, and the determination of no fault was made by the District Court at the same time the court determined the effect of the phrase at issue.
In Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973), the Louisiana Supreme Court found that a consent judgment serves as a judicial admission of a spouse's right to receive alimony, meaning that the receiving spouse is free from fault. The facts of the *950 case at bar are distinguishable from Bernhardt and we find that the Bernhardt rationale is inapplicable in the present situation.
The DeMontluzin's case is not based on a change of circumstances affecting permanent alimony, but questions Mrs. de Montluzin's legal right to claim alimony under article 160. In this case the alimony provision was only up until a specific point in time. In Bernhardt the spouses entered into a consent judgment providing for permanent alimony arrangements and the husband later wanted a modification based on a change of circumstances.
If the trial court should find that the legal effect of the phrase in question is to terminate all support to Mrs. de Montluzin then the issue of fault is of no consequence. If, however, the evidence should indicate that only the $1,300.00 payment terminated, the result would be to arrange for permanent alimony. Civil Code article 160 provides for permanent alimony in cases where the requesting spouse is in necessitous circumstances and is free from fault; because no permanent arrangements were made at the time the agreement was signed, we find that the issues of fault and necessitous circumstances are still open to litigation.
For the foregoing reasons the judgment of the trial court is reversed and the case is remanded.
REVERSED AND REMANDED.
REDMANN, Chief Judge, concurring.
Each ex-spouse claims for the 1980 consent judgment a preclusive effect. The one claims that, by providing that "The payment of the $1,300 alimony and child support payment shall terminate on September 1, 1983," it precludes all future alimony. The other claims that only the $1,300 amount is terminated, and that by the mere fact of awarding post-divorce alimony, the consent judgment has determined for all purposes that she is without fault (and therefore entitled to alimony as long as she shows her need and her ex-spouse's ability to pay).
The consent judgment's wording does not purport to give either of those two effects.
On the one hand, by providing that a specific amount of alimony "and child support" shall terminate at a specified date (after the youngest child's 18th birthday), before which neither ex-spouse will force the sale of the family home, the consent judgment does not declare that the ex-wife has no claim thereafter for alimony. The law is that one ex-spouse always has a claim for alimony from the other, if the one was free from fault and is in need and the other has sufficient income to afford it. The only judgment that precludes alimony forever is one that decrees that the claimant was at fault in the marriage's break-up. This consent judgment did not decree that. If the parties had compromised a dispute between themselves over whether the wife had been at fault, by the wife's conceding that she was at fault and by the husband's agreeing to three years of nonalimony payments, this consent judgment does not say so. This judgment says no more than that for a specified period $1,300 a month will be paid "representing alimony and child support"a wording evidently designed to capture a federal income tax advantage.
On the other hand, the consent judgment equally cannot fairly be said to have decided that the wife was without fault, as if it had merely awarded ordinary post-divorce alimony (which is payable as long as the ex-spouses live, subject to change with circumstances). The consent judgment provided that the $1,300 a month "representing alimony and child support ... shall terminate on September 1, 1983." It further provided that the ex-spouses obliged themselves not to sell the family home before that date. Thus it did not decree the wife entitled to alimony forever, and it may not have decreed her entitled to alimony at all, but to some other payment not intended truly to be alimony.
On its face, the consent judgment shows that child support is part of the award; child support is not deductible from income *951 for federal income tax purposes except when payable together with, and not itemized separately from, alimony. Thus there is a substantial advantage to the family in having the judge describe the payment as "alimony and child support" to make it tax-deductible, even if it were never intended as true alimony.
Also on its face, the judgment shows that the wife is giving up a right in order to collect the "alimony," namely the right to force the sale of the community-owned family home (worth $225,000 net of mortgage, the record indicates)an unprecedented, absolutely foreign element in an "alimony" award. The ex-wife is in a sense "paying" for her "alimony," giving a quid pro quo. Were she to force the sale of the house she should realize $112,500 which, invested in federally insured accounts during the years in question, might have paid her almost $1,300 monthly. We are aware that her ex-husband agreed to the same detrimentperhaps together they accepted these detriments to assure that the children would have the benefit of using the family homeand that the ex-wife would have had to find another, presumably more modest, place to live had she forced the sale. Nevertheless, this unusual aspect of this consent judgment supports the conclusion that the consent was not merely to fix the amount of alimony, as if conceded to be due, and child support for a specified period.
In my view, the consent judgment cannot fairly be read to settle anything except that $1,300 would be paid monthly to the exwife, in a form that would make it deductible on the husband's federal income tax return, until September 1, 1983 (and that neither ex-spouse could force the sale of the family home before that date). Moreover, the trial judge should not admit evidence of what the parties or their lawyers intended (unless in an action to annul the judgment as mistaken). What the court has now to interpret is a judgment and not a contract.
I therefore concur in the majority's setting aside the trial judge's judgment, but I would go further and reverse it entirely and order him to proceed with hearing the ex-wife's rule for alimony as if the question had never been considered by a court. She should be allowed to prove that she was without fault and is in need and that his income enables him to pay. If she does, she should be awarded alimony. Considerations of the court's time aside, that is the fairest thing to do, and the surest to be right: if the ex-wife was not at fault, she should be able to get alimony; if she was at fault, she should not be able to get alimony.